UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH WOO,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>KAISER FOUNDATION HEALTH PLAN INC, et al.,<br><br>　　　　　Defendants. | Case No.  23-cv-05063-RFL<br><br>**ORDER ON CROSS-MOTIONS FOR JUDGMENT**<br><br>Re: Dkt. Nos. 62, 64 |

## I.    INTRODUCTION

On October 4, 2023, Plaintiff Sarah Woo, an employee of Kaiser Foundation Hospitals ("KFH"), filed suit against Defendants Kaiser Foundation Health Plan, Inc. and Kaiser Permanente Retirement Plan (respectively, "Kaiser" and "the Plan"). In 2009, Woo received a letter confirming her eligibility to participate in the after-tax component of the Kaiser Permanente Employees Pension Plan Supplement ("KPEPP") known as the Supplemental Retirement Plan ("SRIP"). Woo enrolled in the SRIP and made voluntary contributions to it. Over the course of a decade, Kaiser, by and through its agents, confirmed in both phone calls and letters that she was an eligible, active participant in the SRIP. However, in December 2020, Kaiser informed Woo for the first time that she was ineligible to participate in the SRIP and was inadvertently permitted to make contributions to it, which Kaiser discovered only after conducting a data quality audit. Woo filed a claim for pension benefits in early 2021. Kaiser, reasoning that Woo was ineligible to participate in the KPEPP (and therefore the SRIP), denied Woo's claim and upheld the denial on appeal.

Woo's complaint raises a single equitable estoppel claim under section 1132(a)(3)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), requesting that the Court

estop Kaiser from precluding her from participating in the KPEPP and the SRIP. (Dkt. No. 2 ("Compl.") at 9–10.)[1] The parties have now filed cross-motions for judgment under Federal Rule of Civil Procedure 52. (Dkt. Nos. 62, 64.) For the reasons that follow, Woo's motion is **GRANTED**, and Kaiser and the Plan's motion is **DENIED**. This Order comprises the findings of facts and conclusions of law required by Rule 52(a).[2]

## II.    LEGAL STANDARD

Under Rule 52(a)(1), "[i]n an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1). In resolving ERISA claims on cross motions for judgment under Rule 52, "the Court conducts what is essentially a bench trial on the record, evaluating the persuasiveness of conflicting testimony and deciding which is more likely true." *McCulloch v. Hartford Life & Accident Ins. Co.*, No. 19-CV-07716-SI, 2020 WL 7711257, at *7 (N.D. Cal. Dec. 29, 2020) (citing *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1094–95 (9th Cir. 1999)). Bench trials arising under ERISA are generally limited to the administrative record. *See Opeta v. Nw. Airlines Pension Plan for Cont. Emps.*, 484 F.3d 1211, 1217 (9th Cir. 2007).

## III.    FINDINGS OF FACT[3]

### A.    The Kaiser Permanente Retirement Plan: Core Plan and Supplements

The Kaiser Permanente Retirement Plan comprises a Core Plan and various supplemental plan provisions. The Core Plan contains provisions applicable to all Plan participants, including

---

[1] All references to page numbers for documents filed on the docket besides the Administrative Record refer to ECF pagination.

[2] To the extent that any findings of fact are included in the Conclusions of Law section, they shall be deemed findings of fact, and to the extent that any conclusions of law are included in the Findings of Fact section, they shall be deemed conclusions of law.

[3] Kaiser requests that the Court strike certain exhibits Woo offers in support of her motion, namely, transcripts of various phone calls she had with Kaiser Permanente Retirement Center ("KPRC"), and a printout of a May 2018 summary of compensation and benefits from Woo's profile on the Kaiser Foundation Health Plan HR Portal. As to the call exhibits, Defendants acknowledge that they are derived from "audio recordings" in the record. Therefore, the Court need not rely on the call exhibits as evidence of what was said during Woo's conversations with KPRC. As to the compensation and benefits summary, consideration of the summary is not necessary to the resolution of this case. Accordingly, the Court denies Kaiser's request as moot.

2

provisions concerning general governance structure, definitions, interpretive authority, and eligibility determinations. (*See* Administrative Record ("AR") 23.)[4] The supplements address region- and role-specific terms, setting forth benefits provisions for different categories of employees or divisions of the employers that participate in the Plan. (*See* AR 257.) By the terms of the Core Plan, in the event of a conflict between the Core Plan and a supplement, the supplement controls unless provided otherwise. (*See, e.g.*, AR 23 ("Core Plan § 1.3") ("In the event of any conflict between the terms of this document and the terms of an Appendix or Supplement, the terms of the Appendix or Supplement shall control unless specifically provided otherwise.").)

As detailed below, the Core Plan appears to contemplate a division of labor between KFH (the "Participating Company") and Kaiser (the "Plan Administrator"), with (a) the Participating Company determining an employee's eligibility to *participate* in the Plan, and (b) the Plan Administrator determining an employee's eligibility to *receive benefits* in accordance with the Plan's terms.

An employee's ability to participate in the Plan turns on whether they are an "Eligible Employee," a term defined in Section 2.31 of the Core Plan and modified by applicable supplements. (AR 28 ("Core Plan § 2.31").) Section 2.31 defines "Eligible Employee" as follows:

> 2.31    Eligible Employee.
> (a) Eligible Employee means an Employee of a Participating Company who is paid on a U.S. dollar payroll and who is classified *as identified in the applicable Supplement*.
> (b) Eligible Employee also includes any individual who was an Eligible Employee and his position becomes governed by a collective bargaining agreement during the period the new collective bargaining agreement is being negotiated.
> (c) Notwithstanding the foregoing, the following individuals are not Eligible Employees and will not be eligible to participate in the Plan:

---

[4] References to page numbers in the Administrative Record refer to the Bates number in the footer of the document following the "Kaiser" prefix.

     (i) Any individual who is not on the payroll of a Participating Company and who, at any time and for any reason, is deemed to be an Employee;

     (ii) *Any Employee whose employment is governed by the terms of a collective bargaining agreement if retirement benefits were the subject of good faith bargaining between a Participating Company and the Employees' representative and such collective bargaining agreement does not provide for participation in the Plan*;

     (iii) Any Leased Employee within the meaning of Code Section 414(n);

     (iv) Other individuals designated by a Participating Company on its records as, independent contractors or consultants (even if a court, the Internal Revenue Service, or another entity or body determines that such individuals are Employees);

     (v) Individuals who are compensated, directly or indirectly, by a Participating Company and with respect to whom compensation is not treated by the Participating Company at the time of payment as being subject to statutorily required payroll tax withholding, such as withholding of federal and/or state income tax and/or withholding of the Employee's share of Social Security tax, and for this purpose statutorily required backup withholding is not payroll tax withholding (even if a court, the Internal Revenue Service or another entity or body determines that such individuals are common law employees); and

     (vi) An individual who is employed by an entity that is acquired by a Participating Company in either a stock or asset purchase will not become an Eligible Employee until the Participating Company explicitly designates the entity that includes the individual as eligible to participate in the Plan.

   (d) An Eligible Employee who becomes disabled and continues to receive Hours of Credited Service during his disability as specifically provided in the applicable Supplement remains an Eligible Employee until he ceases to receive Hours of Credited Service.

(AR 28–29 (emphases added).)  If a participant in the Plan ceases to be an Eligible Employee at any point, certain consequences may follow.  For instance, Section 1.3(c) of Appendix 7 of the Core Plan provides that "[a] Participant who ceases to be an Eligible Employee is not permitted to make a voluntary Contribution or Rollover Contributions"—*i.e.*, such a participant can no

4

longer participate in the after-tax component of the KPEPP, the Supplemental Retirement Income Plan ("SRIP").  (AR 134.)

The Core Plan assigns responsibility for determining whether an employee is an Eligible Employee to the Participating Company: in Woo's case, KFH.  Section 2.31(e) of the Core Plan provides that "[a]n individual's status as an 'Eligible Employee' *shall be determined by the Participating Company*, and any such determination *shall be conclusive and binding on all persons*."  (AR 29 (emphases added).)

By contrast, the Core Plan assigns responsibility for administering the Plan, and determining whether an individual is entitled to benefits under the Plan's terms, to the Plan Administrator.  Section 16.5(g) of the Core Plan grants the Plan Administrator "full discretionary power and authority to administer the Plan, and to do all things necessary or convenient in connection therewith, including . . . [c]onstruing and interpreting the terms of the Plan, including determining eligibility for benefits, the power to remedy possible ambiguities, inconsistencies or omissions."  (AR 101.)  Section 17.1 of the Core Plan specifically grants the Plan Administrator authority to make determinations regarding an individual's entitlement to benefits under the Plan's terms.  Section 17.1 provides:

> (a) The Plan Administrator or Administrative Committee (as applicable) shall have *full and sole discretionary authority to interpret all Plan documents, and to make all interpretive and factual determinations as to whether any individual is entitled to receive any benefit under the terms of this Plan*. Any construction of the terms of any Plan document and any determination of fact adopted by the Plan Administrator or Administrative Committee (as applicable) *shall be final and legally binding on all parties*.
> (b) Any interpretation, determination, rules, computations or other action of the Plan Administrator or Administrative Committee (as applicable) shall be subject to review only if it is arbitrary or capricious or otherwise an abuse of discretion. Any review of a final decision or action of the Plan Administrator or Administrative Committee (as applicable) shall be based only on such evidence presented to or considered by the Plan Administrator or Administrative Committee (as applicable) at the time it made the decision that is the subject of review. Accepting any benefits or making any claim for benefits under this Plan constitutes agreement with and consent to any decisions that the Plan Administrator or Administrative

> Committee (as applicable) makes, in its sole discretion and, further constitutes agreement to the limited standard and scope of review described by this paragraph.

(AR 106 ("Core Plan § 17.1") (emphases added).)

### B.    Woo's Employment History at Kaiser

#### 1.    Woo's Employment in the Southern California Region and Transfer to the Northern California Region

Woo began her employment with Kaiser on April 29, 2002, as an intern in the Southern California Region.  (AR 1753.)  On August 1, 2005, Woo transferred to new position in Southern California, where she became represented by the Guild for Pharmacists in the Southern California Region.  (AR 1753.)  As a result of Woo's membership in the Southern California Guild, she became covered by the Kaiser Permanente Southern California Pharmacists Pension Plan ("KPSCPPP"), a supplement to the Plan.  (AR 1753.)

On June 7, 2009, Woo transferred to a position in the Northern California Region, where she became represented by the Guild for Professional Pharmacists in the Northern California Region.  (AR 1753.)  On June 25, 2009, Vanguard, the entity that administers the SRIP, mailed Woo a letter to inform her that she was eligible to participate in the SRIP.  (AR 1611, 1753.) According to Vanguard, the plan eligibility letter is a "system generated notice that is automatically mailed . . . upon receipt of plan eligibility information from [Kaiser]."  (AR 1569.)  An employee is eligible to participate in the SRIP if they are an Eligible Employee covered by a supplement providing for SRIP participation.  (AR 132.)  Woo's letter included a SRIP enrollment kit and instructions on how to enroll.  (AR 1611, 1753.)  Woo enrolled in the SRIP and, in the fall of 2012, made voluntary after-tax contributions amounting to $1,716.64. (AR 1753.)

#### 2.    Effect of the Northern California Transfer

Unbeknownst to Woo at the time, her transfer to Northern California had brought her outside the Plan's definition of Eligible Employee.  (AR 1756.)  Section 2.2 of Supplement 2-G to the Plan provides:

> 2.2    Eligible Employee.

> The Eligible Employee classification under Plan Section 2.31 for this Supplement is, effective June 6, 2000, an hourly Employee in the Northern California region represented by the Guild for Professional Pharmacists. *Effective January 1, 2010, Eligible Employee does not include an hourly Employee in the Northern California region represented by the Guild for Professional Pharmacists who:*
> (a)    Had less than five Years of Vesting Service on June 1, 2009 and did not timely make a one-time irrevocable election to participate in the Plan; or
> (b)    *Is hired by or who Transfers to a Participating Company on or after June 1, 2009.*

(AR 257 ("Supplement 2-G § 2.2") (emphases added).)  Thus, as of January 1, 2010, Woo's transfer to her Northern California Region position, which was represented by the Northern California Guild for Professional Pharmacists, brought her outside of the Core Plan's definition of Eligible Employee under Section 2.31(a) because the applicable supplement deemed her ineligible.  (AR 1759.)[5]

Moreover, the Northern California Guild's CBA, which went into effect on June 1, 2009, and therefore governed Woo's employment, included the following provision:

> *Effective January 1, 2010*, or as soon thereafter as the Employer is able to apply these changes, *all employees hired on or after the [June 1, 2009] effective date of this agreement will be eligible to participate exclusively in a Kaiser Permanente 401(k) defined contribution plan with a 5% Employer contribution. As of that date these employees will be ineligible to participate in a) the KPEPP plan* and b) the plan described in Paragraphs 1359 and 1360. All eligible employees as defined above will commence participation after completion of one (1) year of service from their date of hire. The Employer contributions will vest in increments of 20% per year, with participants becoming fully vested after five (5) years of service.

(AR 614.)  Therefore, under Section 2.31(c)(ii), Woo was brought outside the definition of Eligible Employee because the CBA governing her employment did not provide for her participation in the Plan.

---

[5] This opinion presumes without deciding that the language specifically excluding Northern California Region employees was validly adopted in 2010 through an amendment to the Plan. Woo argues that this language was not validly adopted until 2015 and that the amendment therefore improperly cut her benefits after they had accrued.  The Court does not reach this issue as it is not necessary to the resolution of the case.  Accordingly, Kaiser's administrative motion for leave to file a response to Woo's objections to Kaiser's attachment of the 2010 amendment to its reply is denied as moot.  (Dkt. No. 71.)

### 3.    Woo's Follow-Ups and Kaiser's Subsequent Representations

After January 1, 2010, a determination that properly applied the terms of the Core Plan and Supplement 2-G should have concluded that Woo was not an Eligible Employee and thus not eligible to participate in the KPEPP and the SRIP.  However, for over a decade, Woo did not receive any indication that she was no longer an Eligible Employee.  She instead received numerous indications to the contrary.  Seeking information about the Plan and her future retirement benefits, Woo contacted the Plan's service center—Kaiser Permanente Retirement Center ("KPRC")—multiple times after her transfer to the Northern California Region.  Each time, she was told either explicitly (or implicitly) that she was still an Eligible Employee.

Between June 26, 2013, and August 7, 2013, Woo called KPRC several times to discuss the number of years of credited service she had under the Plan, the number of hours of credited service required to receive a year of credited service under the Plan, and whether sick leave and paid time off counted toward years of credited service under the Plan.  (AR 1754.)  Defendants concede that during some of these calls, representatives from KPRC confirmed that Woo was an active participant in the Plan.  (Dkt. No. 68 at ¶ 10 (citing AR 1754).)

On April 2, 2018, Woo called KPRC to check when she could retire and receive her benefits.  (AR 1754.)  She asked for the total years of service she had accumulated under the Plan and again asked about the number of hours of service she needed to work in order to receive a year of credited service under the Plan.  (AR 1754.)  The KPRC representative informed Woo that she would be credited with a year of credited service for each calendar year in which she worked 1,800 hours of credited service.  (AR 1754.)  The representative also told Woo that they would call her back with information regarding the number of years of service she had accumulated under the Plan.  (AR 1754.)

On April 3, 2018, KPRC mailed Woo a Credited Service Breakdown for the KPEPP and the KPSCPPP.  (AR 952–53.)  The Credited Service Breakdown confirmed that Woo transferred into the KPSCPPP on August 13, 2005, and then transferred to the KPEPP on June 7, 2009.  (AR 952.)  The Credited Service Breakdown also confirmed that Woo was still active in the KPEPP,

and that as of March 17, 2018, Woo had accrued 11.78 years of Credit Service under the KPEPP and 3.96 years of Credit Service under the KPSCPPP.  (AR 952–53.)

On May 22, 2018, Woo called KPRC and asked several questions about the difference between the Plan benefit and the employer contribution under the Kaiser Permanente 401(k) Retirement Plan.  (AR 1754.)  Woo had received information that she might be eligible for the 6% contribution under the 401(k) Plan because her transfer to the Northern California Region rendered her a "new employee."  (AR 1754.)  The KPRC representative informed Woo that she could not provide information about the 401(k).  However, the representative told Woo that she would be entitled to a benefit under the Plan because the years of service that she had accumulated.  (AR 1754.)  The representative offered to calculate benefit estimates for Woo, and Woo requested estimates with proposed retirement dates at ages 55 and 65.  (AR 1754.)

KPRC mailed Woo two Estimate of Benefits Packages on May 31, 2018, which provided estimates of the benefits she would be eligible to receive at ages 55 and 65, with proposed Benefit Commencement Dates of October 1, 2034, and October 1, 2044.  (AR 1754.)  The Estimates of Benefits contained the following disclaimers:

> The enclosed Estimate of Benefits is only an estimate and is not a guarantee of benefits.
>
> . . .
>
> Also, if the future assumptions about a variety of factors are not realized, including your last day of work, your actual benefit (determined at your actual Benefit Commencement Date) may vary significantly from this estimate. Changes to other factors, including but not limited to pay, years of service, the actuarial assumptions, the Plan terms, the law and economic conditions, may also affect your final benefits. This estimate does not guarantee your right to receive a benefit if you are not entitled to a benefit under the terms of your Plan, nor does it constitute a promise or guarantee of future employment or benefits. If any of the information in this Estimate of Benefits appears incorrect, please call the Kaiser Permanente Retirement Center at 1-866-627-2826.

(AR 932, 936; *see also* AR 941, 945.)

It was not until 2020 that Woo received any indication that she was not eligible to participate in the Plan.  On December 22, 2020, Woo received a letter from Kaiser Permanente

9

Total Rewards stating that following a data quality audit, Kaiser Permanente had determined that Woo was inadvertently permitted to make after-tax contributions to the SRIP despite her being ineligible.  (AR 645.)  The letter stated that to be eligible, Woo needed to have been hired or transferred into a position represented by the Northern California Guild before June 1, 2009.  (AR 645.)  Having determined that Woo was not eligible to participate in the SRIP as of January 1, 2010, the effective date of her exclusion under Supplement 2-G and the Northern California Guild CBA, Kaiser discontinued her SRIP contributions.  (AR 645.)  The letter informed Woo that she should receive a refund equal to the total amount of contributions she made to the SRIP along with any earnings associated with those contributions.  (AR 645.)

### C.    Woo's Eligibility Claim

Woo called KPRC and requested a claim initiation form on February 11, 2021.  (AR 1756.)  On February 18, 2021, she initiated a claim for pension benefits under the Plan, requesting that she be reinstated as an Eligible Employee to participate in the SRIP and the KPEPP.  (AR 641–44.)  Kaiser denied Woo's claim on or about May 7, 2021.  (AR 1007.)  The decision letter stated that under the Plan's terms, an hourly employee in the Northern California Region represented by the Northern California Guild is not eligible to participate in the SRIP (and the Plan generally) if the employee was hired or transferred on or after June 1, 2009.  (AR 1006–10.)

Woo appealed the decision on or about December 20, 2021.  (AR 1678–93.)  In a letter dated October 4, 2022, the Appeals Subcommittee of the Kaiser Permanente Administrative Committee upheld the denial.  (AR 1753–78.)  The letter emphasized that the Plan had to be administered consistently and in accordance with its terms, and reiterated that Woo's transfer to the Northern California Region rendered her ineligible to participate in the KPEPP and the SRIP effective January 1, 2010, under both the terms of the Plan and the applicable CBA.  (AR 1759–60.)  The letter stated, however, that because the provisions rendering her ineligible to participate in the SRIP and the KPEPP were not effective until January 1, 2010, Woo would retain the 0.46 years of service she had earned under the Plan for the period between June 7, 2009, and

December 31, 2009.  (AR 1760.)  Per her complaint, Woo is still employed by KFH and still represented by the Northern California Guild.  (Compl. ¶ 4.)

## IV.    CONCLUSIONS OF LAW

Woo seeks equitable relief under ERISA section 1132(a)(3) estopping and enjoining Kaiser and the Plan from precluding her from participating in the KPEPP and the SRIP.  (Compl. at 9–10.)  To prevail on an equitable estoppel claim under ERISA, a plaintiff must show (1) a material misrepresentation; (2) reasonable and detrimental reliance on the representation; (3) extraordinary circumstances; (4) the provisions of the plan at issue are ambiguous, such that reasonable persons could disagree as to their meaning or effect; and (5) the representations must have been made to the beneficiary involving a spoken or written interpretation of the plan. *Renfro v. Funky Door Long Term Disability Plan*, 686 F.3d 1044, 1054 (9th Cir. 2012); *see also Dawn v. First Bos. Co.*, No. CV 08-2671 ABC, 2010 WL 11507720, at *9 (C.D. Cal. Feb. 22, 2010).  However, "a party cannot maintain a federal equitable estoppel claim in the ERISA context when recovery on the claim would contradict written plan provisions." *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 956 (9th Cir. 2014).  Woo contends that she reasonably and detrimentally relied on representations made by Kaiser and the Plan, by and through its representatives or agents, that she would be eligible to participate in the SRIP and the KPEPP. (*See* Compl. ¶ 38.)  Based on the factual findings above, Woo is entitled to judgment in her favor on her equitable estoppel claim.

### A.    Material Misrepresentation

The facts in the administrative record demonstrate that Kaiser materially misrepresented Woo's eligibility to participate in the SRIP and the KPEPP for over a decade.  When communicating with Woo about her pension benefits, Vanguard and KPRC had apparent authority to interpret the Plan and apply its terms on behalf of Kaiser and KFH.  Accordingly, their representations are attributable to Kaiser and KFH.  *See Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 940 (9th Cir. 2017) ("The legal consequences of an agent's actions may be attributed to a principal when the agent has actual authority (express or implied) or apparent authority.");

*Spink v. Lockheed Corp.*, 125 F.3d 1257, 1262 (9th Cir. 1997) (concluding that complaint stated an equitable estoppel claim arising from misrepresentation by an employer "through its authorized agent or employee").

"Apparent authority results when the principal does something or permits the agent to do something which reasonably leads another to believe that the agent had the authority he purported to have." *Salyers*, 871 F.3d at 940 (quoting *Hawaiian Paradise Park Corp. v. Friendly Broad. Co.*, 414 F.2d 750, 756 (9th Cir. 1969)).  Kaiser and KFH tasked Vanguard with administering the Plan, and Vanguard was the entity that first informed Woo that she was eligible to participate in the SRIP after her transfer to Northern California.  Vanguard sent Woo the eligibility letter only after it received confirmation from Kaiser that Woo was eligible to participate in the Plan.  And Vanguard's letter contained a SRIP enrollment kit and instructions on how to enroll.  Kaiser and KFH allowed Vanguard to be the initial contact for new SRIP-eligible employees, and based on her interactions with Vanguard, Woo reasonably believed that Vanguard had the authority to convey their determinations of whether she was eligible to participate in the SRIP.

KPRC, the Plan's service center, acted as the point of contact for Plan participants who had questions about their benefits under the Plan.  KPRC confirmed several times that Woo was an active participant in the Plan, provided her information about the number of years of service she had accumulated under the Plan, and provided her with estimates of her benefits under the Plan based on her years of accumulated service.  As a result, Woo reasonably believed that KPRC had the authority to communicate Kaiser and KFH's determinations regarding whether she was eligible to participate in the Plan.

Neither Kaiser nor KFH directly provided Woo an initial eligibility decision.  They did not communicate with her about her continued eligibility to participate in the Plan or inform her about her accrued benefits under the Plan.  Instead, Kaiser and KFH delegated these functions to Vanguard and KPRC, and provided Woo with her first individualized eligibility determination in December 2020 via the letter informing her that she was ineligible to participate in the Plan.

Thus, Vanguard and KPRC's representations regarding Woo's eligibility under the Plan are attributable to Kaiser and KFH under an apparent authority theory. *Cf. id*. at 941 ("Providence's direct interaction with plan participants, coupled with MetLife's failure to engage with Salyers about evidence of insurability, suggested that Providence had apparent authority on the collection of evidence of insurability.").

To be sure, Kaiser is correct that some of the communications that Woo proffers do not amount to misrepresentations because they were accompanied by explicit disclaimers that they did not guarantee a right to receive benefits. The Estimate of Benefits Packages Woo received in May 2018, which provided estimates of benefits Woo was eligible to receive at ages 55 and 65, included disclaimers that they were only "estimates" and "do[] not guarantee [an employee's] right to receive benefits if [they] are not entitled to a benefit under the terms of [the] Plan." (AR 936.) Having included disclaimers, the Estimate of Benefits Packages therefore did not misrepresent that Woo was eligible to participate in the SRIP and the KPEPP.

But in other instances, Kaiser and KFH, by and through Vanguard and KPRC, represented to Woo without qualification that she was eligible to participate in the SRIP and the KPEPP. As one early example, Vanguard's June 25, 2009 letter informed Woo that she was eligible to participate in the SRIP and included instructions on how to enroll in the SRIP. (AR 1611.) Even if Vanguard does not ultimately determine Plan eligibility and did not purport to make an eligibility determination in its letter, Vanguard operates as Kaiser's agent regarding Plan enrollment and account management, and automatically mails plan eligibility notification letters upon receipt of eligibility information from Kaiser. *See Salyers*, 871 F.3d at 940. (*See also* AR 1611.) Woo's letter was a true representation of her eligibility at the time it was written because under the terms of the Plan, Woo would remain eligible to participate in the SRIP through the end of 2009. But because Vanguard's statement that Woo was "now eligible to participate" in the SRIP was a forward-looking, not-time-limited statement, it was a half-truth that required a clarification that Woo's eligibility status could (and in fact would) change in the future and a correction when Woo's eligibility purportedly changed. *Cf. Randi W. v. Muroc*

*Joint Unified Sch. Dist.*, 14 Cal. 4th 1066, 1082 (1997), *as modified* (Feb. 26, 1997) ("[W]e view this case as a 'misleading half-truths' situation in which defendants, having undertaken to provide some information regarding Gadams's teaching credentials and character, were obliged to disclose all other facts which 'materially qualify' the limited facts disclosed."). By failing to disclose the possibility that Woo's eligibility status could change in the future and that her eligibility status had in fact changed, Kaiser and KFH (by and through Vanguard) misrepresented Woo's eligibility.

KPRC repeatedly reaffirmed Vanguard's initial representation that Woo was eligible to participate in the SRIP and the KPEPP. In multiple phone calls from June to August 2013, KPRC representatives confirmed that Woo was an active participant in the Plan even after her transfer to the Northern California Region. (AR 1754.) The Credited Service Breakdown that Woo received in 2018 again confirmed that Woo was an active participant in the KPEPP and, going even further, reported that as of her most recent payroll date, she had accrued 11.78 years of Credit Service under the KPEPP. (AR 952–53.) Later that year, a KPRC representative told Woo during a phone call that she would be entitled to a benefit under the Plan because of the years of service that she had accumulated. (AR 1754.) In sum, KPRC misrepresented Woo's eligibility to participate in the Plan multiple times over several years.

The administrative record therefore demonstrates that Kaiser materially misrepresented to Woo that she was eligible to participate in the SRIP and the KPEPP.

### B.      Reasonable and Detrimental Reliance

The administrative record also reflects that Woo reasonably and detrimentally relied on Kaiser's representations. According to Woo's claim initiation form, because she "was already fully vested working full time hours and participating [in the] KPEPP since 2005," being able to continue participating in the KPEPP was a "high priority" when she was deciding "whether or not [to] take the transfer" to the Northern California Region. (AR 643.) And based on Kaiser's misrepresentations, Woo reasonably believed that she continued to be eligible to participate in the SRIP and the KPEPP. Woo worked in the Northern California region for over a decade and

engaged in years of financial planning—as reflected by her numerous calls to KPRC regarding her retirement benefits—under the assumption she would be able to count on receiving retirement benefits through the SRIP and the KPEPP.  Woo filed her claim initiation form shortly after receiving notice that she was not entitled to participate in the Plan, and she has continued to advocate for her participation in the Plan for nearly five years.  As such, Woo's decision to remain at KFH, having reached this point in her career, is not incompatible with her past reliance on Kaiser's representations that she would be able to participate in the Plan.  (Dkt. No. 64 at 27.) Furthermore, Kaiser's promise that it would make a corrective contribution to a 401(k) account for the period before 2020 does not cure the detrimental nature of Woo's reliance.  (Dkt. No. 64 at 28.)  To the contrary, Woo's reliance on being able to participate in the SRIP and the KPEPP was detrimental precisely because she is now, in the latter half of her career, being asked funnel over a decade's worth of earnings into a completely different retirement plan.

### C.    Extraordinary Circumstances

Extraordinary circumstances justify estopping Kaiser from now deeming Woo ineligible to participate in the SRIP and the KPEPP.  For over a decade, Kaiser repeatedly misrepresented to Woo that she was eligible to participate in the SRIP and the KPEPP.  This pattern of repeated misrepresentation is a prototypical example of extraordinary circumstances that support an equitable estoppel claim under ERISA.  *Gabriel*, 773 F.3d at 957 (observing that a "showing of repeated misrepresentations over time" "can constitute extraordinary circumstances" (quoting *Kurz v. Phila. Elec. Co.,* 96 F.3d 1544, 1553 (3d Cir. 1996))).

### D.    Ambiguous Plan Provisions

The provisions in the Plan are also ambiguous such that a reasonable person could disagree as to their meaning and effect.  Kaiser argues that the Plan unambiguously provides that Woo is not an Eligible Employee.  (Dkt. No. 64 at 15–16.)  To be sure, Woo was excluded from the definition of Eligible Employee under Sections 2.31(a) and 2.31(c)(ii) of the Core Plan and Section 2.2 of Supplement 2-G following her transfer to the Northern California Region. However, as described above, Kaiser and KFH (through Vanguard and KPRC) repeatedly and

15

consistently told Woo that she had been determined to be an Eligible Employee, beginning with her initial eligibility letter on June 25, 2009.  The Plan is ambiguous as to what happens when KFH, the Participating Company, makes an error in the eligibility determination.

Section 2.31(e) of the Core Plan provides that KFH's determination of whether an employee is an Eligible Employee under the terms of the Plan "shall be conclusive and binding on all persons."  This implies that KFH (the Participating Company) decides which individual employees qualify as eligible to participate in the Plan, and Kaiser (the Plan Administrator) cannot override that decision even if it interprets the Plan differently.  Kaiser argues that, as the Plan Administrator, it can reverse KFH's eligibility determination if KFH makes a mistake in its determination, pointing to the Plan Administrator's authority to "interpret all Plan Documents" and to determine "whether any individual is entitled to receive any benefit under the terms of this Plan," as described in Section 17.1 of the Core Plan.  But reading this provision as suggesting that the Plan Administrator can supplant the Participating Company's eligibility determinations would render the phrase "conclusive and binding" inoperative.[6]

There is a way to read the Plan to give effect to both provisions, as follows:  The Participating Company decides which individual employees qualify as eligible to participate in the Plan, since it has all the pertinent information about a particular employee such as when they were hired or transferred.  The Plan Administrator then (a) determines what benefits they get under the terms of the Plan and (b) interprets Plan documents generally.  To the extent that the Plan Administrator's interpretation conflicts with the Participating Company's decision as to whether an employee is eligible, the more specific provision controls—*i.e.*, the Participating

---

[6] Moreover, even assuming Kaiser's interpretation is correct, that does not resolve the ambiguity. Kaiser (through Vanguard and KPRC) originally interpreted the Plan to determine Woo eligible based on KFH's initial eligibility determination and represented to Woo that she was eligible to participate in the Plan.  The Plan is ambiguous as to whether Kaiser can *retroactively* amend its prior eligibility determinations.  (*See* Core Plan § 17.1(a) ("Any construction of the terms of any Plan document and any determination of fact adopted by the Plan Administrator or Administrative Committee (as applicable) shall be *final and legally binding* on all parties." (emphasis added)).)  *Cf. Spink*, 125 F.3d at 1262 ("Section 4.6 requires that those statements be considered 'correct and final,' yet section 2.01 indicates that they cannot be 'correct and final' because Spink was over the age of sixty at the time they were issued.").

Company's decision is conclusive and binding.  Contrary to Kaiser's argument, this does not render the Plan's eligibility requirements nugatory, since the Participating Company still agrees to apply the eligibility criteria as described in those provisions.

Either way, the presence of this alternative reasonable interpretation renders the operative Plan language ambiguous.  *Spink* is instructive.  There, the plan precluded participation by employees who had commenced their employment at the age of sixty or older, like the plaintiff.  *Spink*, 125 F.3d at 1262.  Nonetheless, the plaintiff had received annual notices of accrued credit service time, which the plan documents stated were to be treated as "correct and final."  *Id.*  The Ninth Circuit found the plan ambiguous, because "reasonable persons could disagree" as to the effect of the age limitation "when it interacts with the annual statements" that "are deemed 'correct and final'" under the other provision.  *Id.*  The same logic applies here.  One could reasonably read the Plan as treating KFH's eligibility determination as conclusive and binding under Sections 2.31(e) and 17.1, even if it was an erroneous application of the eligibility criteria in Section 2.31.

Kaiser's reliance on the principle articulated in *Gabriel* that forecloses equitable estoppel claims in which recovery on the claim would contradict written plan provisions is of no help.  Estopping Kaiser from precluding Woo from participating in the SRIP and the KPEPP does not contradict written Plan provisions.  Rather, binding the Plan to KFH's original determination that Woo is an Eligible Employee is precisely what Section 2.31(e) of the Core Plan appears to require.  For the same reason, Kaiser's reliance on *Groves v. Kaiser Found. Health Plan Inc.*, 32 F. Supp. 3d 1074 (N.D. Cal. 2014) is misplaced.  *Groves* involved an equitable estoppel claim brought by a plaintiff who had been overpaid $250,000 in a lump sum retirement payout.  *Id.* at 1082.  The court there concluded that the claim failed because such a payout would contradict the unambiguous provisions in the Plan governing the amount of retirement benefits to which the plaintiff was properly entitled.  *Id.* at 1082–84.  Here, by contrast, estopping Kaiser from now finding Woo ineligible to participate in the Plan does not contradict the Plan's terms but rather

gives effect to Section 2.31(e)'s requirement that KFH's eligibility determinations be "conclusive and binding on all persons."

Nor is the ambiguity resolved by the provisions in the Core Plan and Supplement 2-G stating that the Supplement governs in the event of a conflict. (*E.g.*, Core Plan § 1.3.) The conflict between Sections 2.31 and 17.1 is internal within the Core Plan language and does not involve the supplement.

Lastly, Kaiser is incorrect that KFH made an initial eligibility determination as to Woo by entering into CBAs that excluded members of the Northern California Guild hired on or after June 1, 2009, from participating in the Plan. As an initial matter, it is ambiguous as to whether the CBA's exclusion applies to Woo, who *transferred* to the Northern California region on June 7, 2009. (*Compare* AR 614 ("[A]ll employees *hired* on or after the [June 1, 2009] effective date of this [CBA] . . . will be ineligible to participate in . . . the KPEPP plan." (emphasis added)), *with* Supplement 2-G § 2.2 ("Effective January 1, 2010, Eligible Employee does not include an hourly Employee in the Northern California region represented by the Guild for Professional Pharmacists who: . . . *Is hired by or who Transfers* to a Participating Company on or after June 1, 2009." (emphasis added)).) Furthermore, the Plan appears to contemplate that KFH would make individual—not general—eligibility determinations, which it did via Vanguard's representation to Woo in its 2009 eligibility letter. (*See* Core Plan § 2.31 ("An individual's status as an 'Eligible Employee' shall be determined by the Participating Company.").) At best, it is ambiguous whether by entering into the CBAs, KFH was making an *en masse* eligibility determination that would supersede any individualized eligibility determinations.

### E.    Representations Involve Interpretation of the Plan

Finally, the representations made to Woo regarding her eligibility involved interpretations of the Plan. Kaiser, by and through Vanguard and KPRC, represented to Woo that she was an active participant in the SRIP and the KPEPP and that she was "accruing and would continue to accrue credited service toward retirement benefits under the Plan." *Spink*, 125 F.3d at 1263. Kaiser's representations reflected an interpretation of the Plan that KFH's

determination that Woo was an Eligible Employee was conclusive and binding, as dictated by Section 2.31(e) of the Core Plan. These representations did not "enlarge" her rights against the Plan beyond what she could recover under the Plan's unambiguous language. *See Gabriel*, 773 F.3d at 959 (citation omitted).

Kaiser argues that KFH lacks the authority to interpret the Plan's terms, pointing to the Plan Administrator's "full and sole discretionary authority to interpret all Plan documents, and to make all interpretive and factual determinations as to whether any individual is entitled to receive any benefit." But the Plan is still ambiguous as to whether the Plan Administrator can exercise this authority to undermine KFH's conclusive and binding eligibility determination, which necessarily involved an interpretation of the Plan.[7] Accordingly, Kaiser's representations involved interpretations of the Plan.

## V.    CONCLUSION

Woo has established all the elements of her equitable estoppel claim under ERISA. Accordingly, Woo's motion for judgment is granted, and Kaiser and the Plan's motion is denied. The parties are directed to meet and confer and file a form of proposed judgment consistent with this Order by **February 16, 2026**.

**IT IS SO ORDERED.**

Dated: January 26, 2026

RITA F. LIN
United States District Judge

---

[7] Furthermore, for the reasons provided above, KPRC and Vanguard had apparent authority to state Kaiser's original interpretation that Woo was eligible for benefits under the Plan, which appears to have been based on KFH's initial eligibility determination. Though Kaiser subsequently changed its mind about Woo's eligibility to participate, the Plan is at best ambiguous as to whether Kaiser can retroactively reverse its prior eligibility determinations, which are described as "final and legally binding." (*See* Core Plan § 17.1(a).)